Formemo Ltd. v. Commissioner. Loyalties Ltd. v. Commissioner.
Formemo Ltd. v. Commissioner
Docket Nos. 2624, 2625.
United States Tax Court
1944 Tax Ct. Memo LEXIS 110; 3 T.C.M. (CCH) 981; T.C.M. (RIA) 44303; September 22, 1944
*110 J. Donald Duncan, Esq., for the petitioners. Bernard J. Long, Esq., for the respondent. STERNHAGEN The Commissioner determined deficiencies of $1,567.40 and $1,892.30 in personal holding company surtaxes for 1940 and penalties of $391.85 and $473.08 for failure to file personal holding company returns for 1940. The petitioners contend that they are not personal holding companies and were not under a duty to file personal holding company returns. Findings of Fact The petitioners, Delaware corporations, were organized October 10, 1939, with authorized capital of 1,000 no-par shares. During 1940, each had three shareholders of record. Societe Financiere de Transports et d'Entreprises Industrielles (Sofina), a Belgian corporation, controlled or operated public utility companies in Europe, Argentina and Mexico, which utility companies together with Sofina are referred to as the Sofina System. The shares of Sofina were 200,000 common, which are widely held among British, American and Belgian investors, and 40,000 preferred, which, prior to their acquisition by petitioners and Securitas, Ltd., a Delaware corporation, were acquired prior to the outbreak of the present war, as follows: *111 shares
8,000
Centrales Electriques de 1'Entre-Sambre
et Meuse et de la Region de Malmedy,
Brussels, Belgium, a Belgian corpora-
tion and a subsidiary of Sofina
12,000
Compania de Electricidad de la Pro-
vincia de Buenos Aires, Ltd., Buenos
Aires, Argentina, a British corporation
and a company in the Sofina system
12,000
Societe d'Electricite de Rosario, Brus-
sels, Belgium, a Belgium corporation,
controlled by Sofina
8,000
Societe Internationale d'Energie Hydro-
Electrique (SIDRO), Brussels, Belgium,
a Belgian corporation, controlled by
Sofina
When it became necessary, in order to prevent the enemy from acquiring any control over the assets and management of Sofina, it was decided that the preferred shares should be transferred to American companies. Therefore, the petitioners and Securitas, Ltd. were incorporated and they acquired the 40,000 shares of preferred of Sofina as follows: Formemo on or about November 15, 1939, purchased 2,000 shares from Centrales Electriques de l'Entre-Sambre and 12,000 shares from Societe d'Electricite de Rosario with $236,610 loaned to it by Compania General de Industrias y Transportes (Citra), an Argentina corporation in the *112 Sofina system. The certificates held by the selling corporations were cancelled and Certificate No. 8 for 14,000 shares was on November 24, 1939, forwarded to Formemo. Loyalties purchased 6,000 shares from Centrales Electriques de l'Entre-Sambre and 12,000 shares from Compania de Electricidad de la Provincia de Buenos Aires Ltd. with $304,210 loaned to it on or about November 15, 1939, by Citra. The certificates held by the selling corporations were cancelled and on November 24, 1939, Sofina forwarded to Loyalties Certificate No. 10 for 18,000 shares. The remaining 8,000 shares were acquired by Securitas, Ltd., a Delaware corporation, which acts as trustee for certain of the assets of Sofina, from Societe Internationale d'Energie Hydro-Electrique with funds advanced to it by Citra. The three shareholders of record of each petitioner during 1940 were as follows: shares
600
Dannie N. Heineman, chairman of Stanc-
ing Committee of Sofina
200
Gordon Auchincloss, a director of Sofina
200
Henri Speciael, managing director of
Sofina, replaced on May 5, 1940 by
J. Donald Duncan, of counsel to Sofina. Each shareholder acquired the shares by borrowing from Citra on his note, - *113 Heineman, $12,000, Speciael $4,000 and Auchincloss $4,000, and half thereof was used in paying for the 600, 200 and 200 shares, respectively, at $10 a share. On October 25, 1939, the day after the shares were issued, the three shareholders for the purpose of insuring a continuous policy and suitable management in the affairs of the corporation executed separate voting trust agreements as first parties, and D. N. Heineman, Henri Speciael, Raoul Richard, Jean Ehrlich, Charles K. Wilmers, as voting trustees, second parties, and Gordon Auchincloss, James B. Alley and J. Donald Duncan, co-partners, called depositary, third parties. Pursuant to the agreements the shareholders deposited their shares with the depositary as agent of the voting trustees and received voting trust certificates. The voting trust agreement provided that all shares deposited were to be held by the voting trustees. "and their successors in this trust, until the 25th day of October, 1949 (or until the prior termination of this agreement as provided for in Article IV hereof), in trust, however, for the parties of the first part, their executors, administrators and assigns, subject to the terms and conditions of this *114 agreement." Under date of November 8, 1939, Heineman, Speciael and Auchincloss, as owners and holders of the bearer voting trust certificates representing all of the 1,000 shares of Loyalties, granted an option in writing to Securitas to purchase from them at $10 a share the voting trust certificates for 1,000 shares held by them; and the option was accepted by Securitas. A similar option was given to Securitas covering the voting trust certificates for 1,000 shares of Formemo. The income of petitioners during 1940 consisted (except for a small amount) of dividends on the preferred shares of Sofina. The petitioners filed corporation income, declared value excess-profits, and defense tax returns (Form 1120) and corporation excess-profits tax returns (Form 1121) for 1940, but did not file personal holding company returns (Form 1120-H) for 1940. Memorandum Opinion STERNHAGEN, Judge: Both petitioners are in the same situation and contend that they are not personal holding companies and therefore were not subject to the personal holding company surtax or under a duty to file personal holding company surtax returns. The controlling statute is Internal Revenue Code, Sections 501 and *115 503, which define the statutory term personal holding company and the meaning of stock ownership as used in Section 501(a)(2). The petitioners present the proposition that, although their shares are nominally owned by three individuals, they can be traced into the constructive ownership of a large number of persons who are said to be the shareholders of Sofina, and hence that petitioners' shares are within the provisions of the statute, owned by more than five individuals. This would overcome the application of Section 501(a)(2). The evidence does not go far enough to establish the proposition. The facts are practically all stipulated, except for some testimony of counsel which does not supply more of significance than the stipulation. To reduce the petitioners' contention to its essence, they say that the shares were under option to Securitas, which held the option as trustee for Sofina, which in turn must be regarded as substituted for its many shareholders, who are therefore to be recognized under the revenue act as the owners. Without demurring to the logic of the proposition, we are not in position to apply it because the evidence, as distinguished from counsel's statements, *116 does not supply the factual data for its premises. It is shown that Securitas holds an option to acquire the petitioners' shares and, therefore, it must, under Section 503(a)(3), be regarded as the constructive owner of them. Thus Securitas at that point must be recognized as the owner. That, however, still leaves the ownership in less than five persons, unless it be shown that such ownership is in behalf of others. This the petitioners urge upon the ground that Securitas is a trustee for Sofina. The stipulation, however, does not support this, but shows only that Securitas is a trustee "for certain of the assets of Sofina". The trust instrument, if there is one, is not in evidence, and nothing else in the evidence supports the view that the shares of petitioners or the option are held by Securitas in trust for Sofina. We may perhaps surmise that such was the case, or that this arrangement was an incident in the affairs of the Sofina system, as counsel suggest; but when dealing with a revenue statute drawn with such particularity we are prevented from adopting a surmise as a factual datum. Such circumstances as are shown do not impel an inference that the Securitas option, or the *117 petitioners' shares, or the Sofina preferred, are among "certain of the assets of Sofina" which Securitas holds in trust. Counsel intimates that the substantial ownership of the petitioners' shares is rather in the four corporations which formerly owned the Sofina preferred; but identity of the shareholders of the four corporations does not appear in evidence. We are, therefore, compelled to hold that since the shares of petitioners are held by not more than five individuals and there are not enough facts to indicate that statutory constructive ownership may be imputed to more than five individuals, petitioners are personal holding companies within the meaning of the statute. The Commissioner's determination to that effect is sustained. The petitioners do not deny that they failed to file personal holding company surtax returns. By Section 508, they are subject to the penalties of Section 291, "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". The evidence contains no showing whatever as to the cause of the failure. An allegation of the petition is denied in the answer, and is therefore not helpful; nor is a statement made by counsel *118 at the opening of the trial. In the absence of evidence of reasonable cause for the failure to file the returns, the penalties cannot be set aside. Decision will be entered for the respondent.